IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BEN PADILLA,

      Plaintiff,

vs.                                                   No. CIV 00-1233 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed on November 15, 2002. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff's eligibility for disability insurance benefits had ceased. The Court, having considered Plaintiff's Motion **[docket # 21]** and Memorandum Brief **[docket # 22],** Defendant's Response **[docket # 23],** Plaintiff's Reply **[docket # 24],** the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED,** and that this matter should be remanded to the Commissioner for an immediate award of benefits.

### Procedural Background

The circuitous route by which this matter comes on for consideration is as follows. Plaintiff, who was born on November 19, 1953, **Tr. 22,** filed his initial application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act on January 24, 1992. **Tr. 22-25.** Plaintiff alleged that he became unable to work as a result of a back injury and knee problems on January 1, 1989. *See* **Tr. 22, 112.** After Plaintiff's application for benefits was denied at the initial level, **Tr. 26-27,** and at the reconsideration level, **Tr.**

**29-30,** Plaintiff appealed by requesting a hearing with an administrative law judge ("ALJ"), **Tr. 31, 74.** In a decision dated June 11, 1993, the ALJ found that Plaintiff was disabled as a result of chronic alcoholism beginning January 1, 1989 and that he was entitled to benefits. **Tr. 111-116.**

The Administration subsequently notified Plaintiff that it had determined that his disability had ceased on July 1, 1995, and that his benefits would be terminated in September, 1995. **Tr. 122-124.** Plaintiff filed a request for reconsideration on August 8, 1995, **Tr. 136-137,** which was denied on April 9, 1996, **Tr. 164-166.** Plaintiff then requested a hearing before an ALJ, **Tr. 167-168,** and a hearing was held on December 4, 1996, **Tr. 259-290.** Plaintiff appeared at the hearing without representation by an attorney, and alleged that he was disabled as a result of foot, knee and back pain. **Tr. 271-72.** In a decision dated January 9, 1997, ALJ William Bivins determined that Plaintiff's period of disability and benefits were correctly terminated. **Tr. 15-19.** Plaintiff filed a letter request for review of the ALJ's decision on February 13, 1997, **Tr. 234-235,** and subsequently obtained representation by a non-attorney, who also filed a request for review with the Appeals Council on August 14, 1997, **Tr. 10.** The Appeals Council denied Plaintiff's request for review on May 6, 2000, **Tr. 5-6,** and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 404.981; 20 C.F.R. § 416.1481.

After receiving an extension of time from the Appeals Council, **Tr. 259,** Plaintiff, who is now represented by an attorney, filed this action on August 25, 2000 in which he seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Defendant then filed a Motion to Remand on January 24, 2001 pursuant to sentence six of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) on the ground that the Commissioner could not locate Plaintiff's claim file. After the case was remanded, the Commissioner located Plaintiff's claim folder, and

Defendant requested that the case be reopened. Accordingly, the Court reopened the case on August 2, 2001 and set a briefing schedule. However, on September 20, 2001, Defendant sought and obtained an extension of the briefing schedule because the administrative record was incomplete and required supplementation. After the Court granted Defendant's request for an extension of the briefing schedule, Defendant filed another Motion to Remand pursuant to sentence six because the Commissioner could not locate the cassette tape of the hearing held by ALJ Bivins. On November 2, 2001, the Court remanded the case and directed that an ALJ conduct a *de novo* hearing.

Defendant filed another Motion to Reopen the case on April 1, 2002. In that Motion, Defendant explained that after the case had been remanded, the cassette tape was found and a transcript of the hearing had been prepared. In response to Defendant's Motion to Reopen, Plaintiff advised the Court that he had filed a new application for DIB and SSI on July 29, 1999, at a time when his request for review of the ALJ's January 9, 1997 decision "had been languishing before the Appeals Council for two-and-one-half years." After a hearing on Plaintiff's new application, ALJ Larry Johnson issued a decision dated August 24, 2001 in which he found that Plaintiff was disabled beginning October 10, 1995 and was entitled to benefits. *See* Ex. B to Pl.'s Resp. in Opp. to Def.'s Mot. and Mem. to Reopen **(docket # 15).**[1] Plaintiff contended that the January 9, 1997 decision in which ALJ Bivins found that Plaintiff's disability had ceased effective July 1, 1995 conflicted with ALJ Johnson's decision. Plaintiff therefore opposed Defendant's motion to reopen this case on the ground that "[t]he Commissioner's August 2001 favorable decision served, *de facto,* to reopen and revise the January 1997 decision to render it fully favorable." Despite Plaintiff's arguments, the

---

[1] Plaintiff was only eligible to recover benefits under the new application for a period beginning in July, 1998.

3

district court reopened this case in an Order entered on July 24, 2002 **[docket # 17],** and briefing on the Motion presently before the Court was completed on February 27, 2003. The parties subsequently consented to have the undersigned United States Magistrate Judge conduct all proceedings **[docket # 28, 29],** and on August 28, 2003, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) **[docket # 30].**

## Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

Plaintiff was initially found disabled as a result of chronic alcoholism beginning January 1, 1989. After a claimant has been found disabled, the Administration periodically conducts continuing disability reviews to ensure that the claimant remains eligible for benefits. *See* 20 C.F.R. § 404.1589 (2003); 20 C.F.R. § 416.989 (2003). Plaintiff's disability benefits were terminated when the

Administration determined that he was no longer disabled, and the ALJ's decision that is the subject of this appeal affirmed that determination. The following sequential analysis, which is detailed at 20 C.F.R. § 404.1594(f),[2] applies when the issue is whether a claimant's disability has ceased:

<u>Step One</u>: Is the claimant engaging in substantial gainful activity? If so, his or her disability has ended. If not, the analysis proceeds to step two.

<u>Step Two</u>: Does the claimant have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment")? If so, the claimant's disability continues. If not, the analysis proceeds to step three.

<u>Step Three</u>: Has the claimant shown medical improvement? If there has been medical improvement as shown by a decrease in medical severity, the analysis proceeds to step four. If not, there has been no medical improvement, and the analysis proceeds to step five.

<u>Step Four</u>: If there has been medical improvement, the question is whether the improvement is related to the claimant's ability to do work. More specifically, the question is whether there has been an increase in the claimant's residual functional capacity based on the impairment(s) present during the most recent favorable medical determination. If medical improvement is not related to the claimant's ability to work, the analysis proceeds to step five. If medical improvement is related to claimant's ability to work, the analysis proceeds to step six.

<u>Step Five</u>: If at step three there was a finding of no medical improvement or if at step four there was a finding that the medical improvement is not related to the claimant's ability to work, the

---

[2]The cited regulation applies to DIB claims. The counterpart regulation for SSI claims, 20 C.F.R. § 416.994, sets forth a similar test that omits step one of the eight-step DIB analysis.

question is whether any exceptions in 20 C.F.R. § 404.1594(d) and (e) apply. If none apply, the claimant's disability continues. If an exception from the first group of exceptions applies, the analysis proceeds to step six. If an exception from the second group of exceptions to medical improvement applies, the claimant's disability has ended.

<u>Step Six</u>: If at step four there was a finding that the claimant's medical improvement is related to his or her ability to do work, or if at step five there was a finding that the first group of exceptions to medical improvement applies, the question is whether all of the claimant's current impairments in combination are severe. If the claimant's impairments are not severe, his or her disability has ended.

<u>Step Seven</u>: If the claimant has a severe impairment(s), his or her current ability to engage in substantial gainful activity is assessed. At this step, the claimant's residual functional capacity is assessed based upon all of the claimant's current impairments, and it must be determined whether the claimant can still do work he or she has done in the past. If so, the claimant's disability has ended.

<u>Step Eight</u>: If the claimant is unable to do work he or she did in the past, the question is whether, in light of the residual functional capacity assessment and considering the claimant's age, education and past work experience, the claimant can do other work. If so, the claimant's disability has ended. If not, the claimant's disability continues.

## **Summary of the Issues**

Although Plaintiff contends that ALJ Bivins erred at steps two through five of the sequential analysis, he has erroneously cited the five-step sequential analysis applicable to initial disability determinations instead of the eight-step sequential analysis that applies in this termination of benefits case. To clarify the issues, I will first determine whether there is a dispute as to each step of the applicable eight step sequential analysis.

At step one of the applicable analysis, ALJ Bivins found that Plaintiff had not engaged in substantial gainful activity "since the time of the favorable comparison point decision." **Tr. 16.** Plaintiff does not dispute this finding. At step two, ALJ Bivins found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. **Tr. 18.** Plaintiff asserts generally that, because the ALJ failed to consider all of his medical impairments, he could not have properly compared his impairments to the Listings. *See* Pl.'s Mem. Br. at 12-13. However, if Plaintiff contends that ALJ Bivins should have found that he met one of the Listings, he should have identified the Listing he claims he met and pointed to evidence in the record supporting such a finding. Because I cannot even ascertain what Listing, if any, Plaintiff may claim to have met, I must assume Plaintiff does not dispute ALJ Bivins' finding that he did not have an impairment that met or medically equaled one of the Listings.

At steps three and four, ALJ Bivins found that Plaintiff underwent medical improvement that was related to his ability to do work. **Tr. 18.** Plaintiff does not dispute ALJ Bivins' finding that, effective July 1, 1995, his alcoholism had medically improved and was no longer disabling. Since Plaintiff does not address the issue, I also assume there is no dispute that the medical improvement in his alcoholism was related to his ability to work. Further, since ALJ Bivins' finding of medical improvement related to Plaintiff's ability to work is undisputed, step five of the eight step analysis does not apply in this case.

At step six of the sequential analysis, the ALJ found that Plaintiff "currently has severe impairment consisting of chronic back pain and degenerative lumbar disc disease." **Tr. 17.** Plaintiff contends that ALJ Bivins' step six finding is insufficient in that ALJ Bivins failed to acknowledge his additional severe impairments. At step seven, ALJ Bivins found that Plaintiff was unable to perform

7

his past relevant work as a firefighter, a porter, a painter, a cook, and a maintenance person. **Tr. 18.** Although Plaintiff does not dispute ALJ Bivins' finding that he cannot perform his past relevant work, Plaintiff takes issue with ALJ Bivins' assessment of his residual functional capacity at step seven. Finally, at step eight the ALJ concluded that, in light of Plaintiff's residual functional capacity assessment and considering his age, education and past work experience, Plaintiff could do other work that exists in significant numbers in the regional and national economies. **Tr. 18-19.** Specifically, the ALJ concluded that Plaintiff could perform the jobs of parking lot attendant and telephone answerer. **Tr. 18.** Plaintiff disputes ALJ Bivins' findings at step eight, and, in addition, Plaintiff also contends that ALJ Johnson's decision reopened and altered, in Plaintiff's favor, ALJ Bivins' earlier unfavorable decision and thereby renders review unnecessary in this case.

## Discussion

### Does ALJ Johnson's Decision Constitute a *De Facto* Reopening of ALJ Bivins' Decision?

Given the complicated procedural background presented in this case, I will begin by clarifying the benefits that are at issue. ALJ Bivins found that Plaintiff's disability ended effective July 1, 1995, and that his benefits were correctly terminated as of September 30, 1995. **Tr. 19.** Pursuant to another application filed by Plaintiff in July, 1999, ALJ Johnson found that Plaintiff was disabled beginning October 10, 1995. However, because Plaintiff did not submit the application for benefits that was granted by ALJ Johnson's decision until July of 1999, under the Commissioner's regulations it appears that Plaintiff was only eligible to recover benefits under ALJ Johnson's decision for a period beginning in July, 1998. Thus, Plaintiff did not receive benefits from October 1, 1995 through the end of June, 1998. Although the parties do not clearly state whether this is in fact the period in

dispute, their respective arguments about how ALJ Bivins' decision should be reconciled with ALJ Johnson's decision may affect the amount of time for which Plaintiff may, after the disposition of this appeal, recover benefits. Not surprisingly, the parties have differing views on the issue.

Defendant contends that if this Court is unable to affirm ALJ Bivins' decision, "the proper remedy would be to remand the case to the Commissioner for further proceedings in order to resolve the discrepancy between the two ALJ decisions." If the Court accepts Defendant's argument, the Commissioner could conceivably overturn ALJ Johnson's determination that Plaintiff was disabled beginning on October 10, 1995. However, if the Commissioner was dissatisfied with ALJ Johnson's decision, the proper procedure would have been for the Appeals Council to initiate review of Judge Johnson's decision on its own motion. *See* 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. Plaintiff points out that the Appeals Council has sixty days to initiate review of an ALJ's decision, *see* 20 C.F.R. § 404.969(a); 20 C.F.R. § 416.1469(a), and more than sixty days have elapsed since ALJ Johnson issued his decision. Although the Appeals Council is thus foreclosed from initiating review of ALJ Johnson's decision on its own motion, the Appeals Council may also reopen a case under certain conditions if it is unable to decide within sixty days whether to initiate review on its own motion. *See* 20 C.F.R. § 404.969(d); 20 C.F.R. § 416.1469(d). Nevertheless, since the Appeals Council has not reopened ALJ Johnson's decision, and since no party has appealed ALJ Johnson's decision to this Court in accordance with 42 U.S.C. § 405(g) or 42 U.S.C. § 1383(c)(3), I find that ALJ Johnson's decision presently stands as a final decision by the Commissioner. Accordingly, under the circumstances presented I find that this Court lacks authority to order the Commissioner to revisit, or otherwise revise, ALJ Johnson's decision. It is ALJ Bivins' decision, not ALJ Johnson's, that is properly before this Court. I therefore reject Defendant's argument that if this Court is unable

9

to affirm ALJ Bivins' decision, the case should be remanded for further proceedings in order to resolve the discrepancy between the two ALJ decisions.

Plaintiff contends, on the other hand, that ALJ Johnson's decision constitutes a *de facto* reopening of ALJ Bivins' decision. According to Plaintiff, ALJ Johnson's decision finding that he was disabled as of October 1995 revised ALJ Bivins' determination that his disability ceased effective July 1995. If the Court accepts this argument, Plaintiff would concede any disability between July 1995 and October 1995. Plaintiff also asserts that, if ALJ Johnson's decision constitutes a *de facto* reopening, review in this case is unnecessary. For the following reasons, I find that ALJ Johnson's decision does not constitute a *de facto* reopening that revised ALJ Bivins' decision.

Plaintiff cites *Taylor ex rel. Peck v. Heckler,* 738 F.2d 1112 (10th Cir. 1984) as support for a finding that, because ALJ Johnson reviewed the case on its merits and rendered a decision that encompassed the prior adjudicative time period, that decision constitutes a *de facto* reopening of ALJ Bivins' earlier decision. In *Taylor,* the court ruled that where an ALJ reviews a case on its merits that has previously been adjudicated at the administrative level, his or her decision may constitute a *de facto* reopening of the case. *Taylor,* 738 F.2d at 1114-15. However, the *Taylor* court's decision was based upon regulations that permit the Commissioner to reopen a decision for good cause within four years of the date of notice of the initial determination. *Id.* (citing 20 C.F.R. §§ 404.987 - 404.989). In this case ALJ Johnson's decision was issued on August 24, 2001, more than four years after the initial determination by ALJ Bivins was issued on January 9, 1997. In cases where a subsequent determination is issued more than four years after notice of an initial determination, courts have generally ruled that the subsequent determination could not be characterized as a *de facto* reopening of the case. *See, e.g., Coates v. Bowen,* 875 F.2d 97, 101 (7th Cir. 1989); *Kasey v.*

10

*Sullivan,* 3 F.3d 75, 78-79 (4th Cir. 1993).  Accordingly, because ALJ Johnson's decision was issued more than four years after the initial determination, and no other regulation appears to authorize reopening in this case,[3] I find that ALJ Johnson's decision does not constitute a *de facto* reopening.

In light of the foregoing discussion, the question presented is whether ALJ Bivins erred when he found that Plaintiff's disability had ceased as of July 1, 1995.  ALJ Johnson subsequently determined that Plaintiff was disabled beginning on October 10, 1995, and I have found that ALJ Johnson's decision stands as a final decision by the Commissioner.  However, because the application that was granted by ALJ Johnson's decision was not filed until July 1999, Plaintiff was only entitled to recover benefits under that application for a period beginning in July 1998.  Thus, as a result of ALJ Bivins' decision, Plaintiff's benefits were terminated effective September 30, 1995, and Plaintiff did not receive benefits from October 1995 through June, 1998.  Plaintiff's entitlement to benefits for the period from October 1995 through the end of June 1998 is, therefore, at issue.

### Did the ALJ Err by Failing to Include Additional Medical Diagnoses in His Characterization of Plaintiff's Severe Impairments?

The ALJ concluded at step six that Plaintiff "currently has severe impairment consisting of chronic back pain and degenerative lumbar disc disease."  **Tr. 17.**  Plaintiff contends that the ALJ erred by failing to include the following in his characterization of Plaintiff's severe impairments:  1) lumbar spondylolysis, 2) lumbar spondylolisthesis, 3) chronic right knee instability with pain, swelling and crepitation, with probable osteoarthritis from previous trauma and probable medial collateral

---

[3]Applicable regulations provide that a decision may be reopened "(a) [w]ithin 12 months of the date of the notice of the initial determination, for any reason; (b) within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.489, to reopen the case;" or at any time for a variety of reasons, such as where the decision was obtained by fraud or similar fault, that do not appear to be present in this case.  *See* 20 C.F.R. § 404.988.

ligament strain, 4) a chronically painful suspected hallux valgus deformity with swelling and hammer toes of the left foot, and 5) post traumatic myofascial discomfort to the back, hip and neck secondary to the lumbar spine impairment.

Even if I assume for purposes of argument that ALJ Bivins failed to include spondylolysis, spondylolisthesis, chronic knee instability and pain, hallux valgus deformity, and myofascial discomfort among the impairments that should properly have been characterized as severe at step six, failure to do so would not have prejudiced Plaintiff. If ALJ Bivins found that Plaintiff had *no* severe impairments, he would have upheld the termination of Plaintiff's benefits at step six. Because ALJ Bivins found that Plaintiff *does* have severe impairments, he continued with steps seven and eight of the sequential analysis. Moreover, even if ALJ Bivins did not find that the additional impairments were severe at step six, he was required to consider those additional impairments in assessing Plaintiff's residual functional capacity for purposes of the remaining steps in the sequential analysis. *See* 20 C.F.R. § 404.1594(f)(7) (if claimant has a severe impairment, residual functional capacity is assessed based on *all* of claimant's current impairments). I therefore find that even if ALJ Bivins failed at step six to characterize Plaintiff's additional impairments as severe, that omission would constitute harmless error. *See Maziarz v. Secretary of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (where an ALJ found that plaintiff had several severe impairments, his failure to find that an additional medical condition was a severe impairment could not constitute reversible error). I will, however, consider Plaintiff's contention that ALJ Bivins erred when he failed to consider his additional impairments at other steps of the sequential analysis in the discussion below.

**Did the ALJ Err When He Assessed Plaintiff's Residual Functional Capacity?**

Plaintiff also contends that ALJ Bivins erred when he assessed his RFC. In addition to his

argument that ALJ Bivins failed to consider all of his impairments, Plaintiff contends that the ALJ's RFC assessment is deficient in that he failed to make express findings regarding Plaintiff's physical RFC. For the following reasons, I agree that ALJ Bivins' RFC assessment is legally insufficient.

An RFC assessment, which represents a measurement of the most a claimant can still do despite the limitations caused by his or her impairments, 20 C.F.R. § 404.1545(a)(1), is used to determine whether a claimant can still do past work or any other work at steps seven and eight of the applicable sequential analysis. *See* 20 C.F.R. § 404.1594(b)(4). In assessing a claimant's RFC, the Commissioner must "consider all of [a claimant's] medically determinable impairments of which [she is] aware, including [a claimant's] medically determinable impairments that are not 'severe' . . . ." 20 C.F.R. § 404.1545(a)(2). First, I find that ALJ Bivins erred when he failed to consider all of Plaintiff's impairments that are evidenced in the record.

In assessing Plaintiff's RFC, it appears that ALJ Bivins may have considered Plaintiff's back, hip and neck impairments. Although not discussed in detail, ALJ Bivins found that Plaintiff "currently has severe impairment consisting of chronic back pain and degenerative lumbar disc disease," **Tr. 17,** and also mentioned the fact that Dr. Karyn Doddy diagnosed Plaintiff with spondylolysis, spondylolisthesis, and post traumatic myofascial discomfort in his back, hip and neck secondary to the spondylolysis and spondylolisthesis. **Tr. 17.** In his Memorandum Brief, Plaintiff points out that lumbar spondylolysis is a degenerative joint disease affecting the lumbar vertebrae and discs that causes pain and stiffness. Accordingly, because these impairments are mentioned in ALJ Bivins' decision, I will assume that ALJ Bivins considered spondylolysis, spondylolisthesis and secondary myofascial discomfort when he assessed Plaintiff's RFC.

On the other hand, the record also indicates that Plaintiff has medically determinable knee and

foot impairments that were not addressed by ALJ Bivins. On March 24, 1992, Dr. Larry Schreiber prepared a Disability Report that indicated that Plaintiff's right knee was "markedly swollen" and had "some laxity to the medial collateral ligament on that side and some pain upon movement of the knee but a full range of motion." **Tr. 66.** Dr. Schreiber also reported that Plaintiff's left foot showed "a swollen area at the first metatarsal that may be an atypical hallux valgus or might be secondary to previous fracture." **Tr. 66-67.** Dr. Schreiber's assessment included "[c]hronic right knee instability and pain with probable osteoarthritis from previous trauma and probable medial collateral ligament strain," and "[p]ain in the left foot, probable osteoarthritis, questionable hallux valgus." **Tr. 67.** Dr. Schreiber evaluated Plaintiff again on February 1, 1996. **Tr. 211-212.** At that time, Dr. Schreiber wrote that Plaintiff's right knee was "definitely swollen with some tenderness medially and significant crepitation of movement of the patella." **Tr. 212.** Dr. Schreiber also reported that Plaintiff "has a hallux valgus deformity of the left foot, and a swollen area of the first metatarsal." **Tr. 212.** Again, his assessment included "[c]hronic knee discomfort with objective swelling on today's exam. Possible hallux valgus and foot pain." **Tr. 212.**

Despite the foregoing assessments by Dr. Schreiber, ALJ Bivins never mentioned these impairments in his decision. In fact, the only information even arguably related to Plaintiff's knee and foot impairments is found in the following paragraph in ALJ Bivins' decision:

> The February 1, 1996 consultative examination report by Dr. Larry Schreiber revealed normal sensory function and no muscular atrophy. Straight leg raising was unremarkable. Range of motion of the lumbar spine revealed flexion and extension limited to 60 degrees. He was able to grasp, write, pinch, and make a fist. He was able to stand, stoop, walk, sit, and squat but did this quite slowly. He was able to walk on his toes and walk on his heels.

**Tr. 17.** I do not find these statements by ALJ Bivins sufficient to find that he considered Plaintiff's

documented knee and foot impairments in assessing Plaintiff's RFC. In other words, absent some discussion of Plaintiff's knee and foot conditions and how they affected Plaintiff's ability to function, I cannot determine whether or not ALJ Bivins considered those impairments in his RFC assessment. If ALJ Bivins did not, his failure to consider a known impairment would, in and of itself, be grounds for reversal. *Washington v. Shalala,* 37 F.3d 1437, 1440 (10th Cir. 1994). Even if ALJ Bivins considered the evidence of Plaintiff's knee and foot impairments and rejected that evidence, it would have been improper for him to do so without explanation. *See Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). Indeed, "[a]n ALJ may not ignore the evidence and make no findings." *Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir. 1995). I therefore find that ALJ Bivins' RFC assessment is legally insufficient in that it fails to address Plaintiff's knee and foot impairments.

As an additional matter, the Social Security Administration requires that, when assessing a claimant's RFC, an ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.[4] In addressing Plaintiff's RFC, ALJ Bivins wrote:

> The functional capacity assessment by Dr. Doddy revealed an ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk for one hour at a time and four to six hours with interruption. Although he can sit for eight hours total, he can sit for only one hour at a time. His ability to handle is

---

[4]Although SSR 96-8p provides the Administration's policy interpretation for assessing RFC in initial claims, agency regulations indicate that RFC assessments in termination cases are conducted in accordance with the same regulation that governs RFC assessments in initial claims. *See* 20 C.F.R. § 404.1594(b)(4) ("[h]ow the residual functional capacity is assessed is discussed in more detail in § 404.1545."). Accordingly, I find that ALJ Bivins should have followed SSR 96-8p when he assessed Plaintiff's RFC in this termination case.

adversely affected by his impairment.

**Tr. 17.** ALJ Bivins also noted that Plaintiff "testified that he can sit for over an hour, stand two to three hours, walk one mile, and lift five to ten pounds." **Tr. 17.** Apart from these statements, ALJ Bivins provided no explanation or other discussion as to how he arrived at his conclusions regarding Plaintiff's RFC. In fact, I cannot even ascertain from ALJ Bivins' decision whether he adopted Dr. Doddy's functional capacity assessment or Plaintiff's own testimony about the limits of his ability to sit, stand, walk and lift. ALJ Bivins clearly failed to comply with the Administration's requirement that he provide a narrative discussion describing how the evidence supports each conclusion regarding Plaintiff's RFC. His assessment is, therefore, legally insufficient on this ground as well.

I also note that ALJ Bivins concluded, with no explanation or discussion, that Plaintiff's "testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and, therefore, lacked credibility." **Tr. 18.** While the courts generally defer to an ALJ's determination as to a claimant's credibility, the ALJ's "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988)). In this case, ALJ Bivins failed to link his conclusion that Plaintiff's testimony was not credible with any evidence whatsoever. His opinion simply contains the conclusion that Plaintiff's testimony regarding his functional limitations and complaints of pain lacked credibility.

Finally, Plaintiff points out that one of his treating physicians, Dr. Karyn Doddy, wrote that Plaintiff could sit for one hour uninterrupted, for eight hours per day, but required "frequent (every 20 minute) changes in position." **Tr. 225.** Even though ALJ Bivins appears to have relied upon Dr.

16

Doddy's report when he assessed Plaintiff's RFC, ALJ Bivins never mentioned Dr. Doddy's statement that Plaintiff requires frequent changes in position. An ALJ must give controlling weight to a treating physician's opinion regarding a claimant's symptoms, diagnosis and prognosis, and physical or mental restrictions, if the opinion is "well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994). Dr. Doddy based her finding that Plaintiff can sit for one hour uninterrupted, for eight hours per day, with frequent changes in position, on her diagnosis of spondylolisthesis and spondylolysis of the lumbar spine with degenerative disc disease. **Tr. 225.** Dr. Doddy's diagnosis relating to Plaintiff's back condition also seems entirely consistent with all of the other evidence in the record. For example, an imaging report dated October 2, 1992 from Holy Cross Hospital indicates that Plaintiff had spondylolysis and minimal spondylolisthesis of L5 with associated degenerative disc disease. **Tr. 83.** Records from the Questa Health Center dated April 11, 1995 note Plaintiff's significant history of spondylolisthesis, spondylolysis and degenerative joint disease, and contain a recommendation that Plaintiff see a specialist for recommendations for physical therapy and work. **Tr. 186.** On February 1, 1996, Dr. Larry Schreiber noted that Plaintiff suffers chronic back pain, and that his lumbar spine flexion and extension was limited to sixty degrees. **Tr. 212.**

Defendant contends, however, that Dr. Doddy's statement that Plaintiff required frequent changes in position is irrelevant because it was made fifteen months after the date when Plaintiff's disability was found to have ceased. In other words, the pertinent question in this case is whether ALJ Bivins correctly found that Plaintiff's disability terminated on July 1, 1995, and Dr. Doddy did not opine that Plaintiff required frequent changes in position until October 31, 1996. **Tr. 224-225.**

17

I note, however, that Dr. Doddy's opinion was based upon x-rays of Plaintiff's lumbar spine taken in October, 1992. **Tr. 220.** Moreover, the hearing before ALJ Bivins occurred on December 4, 1996, more than one month after Dr. Doddy issued her report, and ALJ Bivins specifically relied upon Dr. Doddy's report when he assessed Plaintiff's RFC. ALJ Bivins was not free to adopt some of Dr. Doddy's findings and disregard others without explanation. *See Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) (ALJ may not ignore significantly probative evidence that does not support his decision) (citing *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Because Dr. Doddy's finding that Plaintiff required frequent position changes appears to be well supported and is not inconsistent with other substantial evidence in the record, I find that ALJ Bivins should have included this limitation in his assessment of Plaintiff's RFC. *See generally* SSR 96-9p (where an individual needs to alternate sitting required for sedentary work with standing, RFC assessment must be specific regarding his or her need to alternate sitting and standing).

For the foregoing reasons, I find that ALJ Bivins' RFC assessment at step seven of the eight step sequential analysis is legally insufficient.

### Did the ALJ Err When he Found That Plaintiff Could Perform Other Work That Exists in Significant Numbers in the National Economy?

At step eight of the sequential analysis, ALJ Bivins was required to determine whether, in light of Plaintiff's RFC and considering his age, education and past work experience, Plaintiff could do other work. ALJ Bivins concluded that, based upon Plaintiff's RFC and considering his age, education and past work experience, there are a significant number of jobs the regional and national economies that Plaintiff can perform, including parking lot attendant and telephone answerer. **Tr. 19.** Plaintiff disputes this finding on several grounds. However, because I have found that ALJ

Bivins' RFC assessment was legally insufficient, his step eight finding that Plaintiff can do other work also cannot stand. It is therefore unnecessary for me to address Plaintiff's step eight arguments.

## Disposition

When this Court reverses a decision by the Commissioner, the Court has discretion to either remand for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala,* 992 F.2d 1056, 1060 (10th Cir. 1993). It is appropriate to remand for an immediate award of benefits where "additional fact-finding would serve no useful purpose but would merely delay the receipt of benefits." *Harris v. Secretary of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987). Remand for an immediate award of benefits may also be justified in cases where the Commissioner has patently failed to conduct a proper analysis as to whether the claimant has the residual functional capacity to perform work that exists in significant numbers in the national economy, and a "long delay . . . has already occurred as a result of the [Commissioner's] erroneous disposition of the proceedings." *See Ragland,* 992 F.2d at 1058-60; *see also Nielson v. Sullivan,* 992 F.2d 1118 (10th Cir. 1993) (where ALJ failed to make specific findings required to determine that a claimant of advanced age could perform other work, and application for benefits had been pending for over four years, remand for immediate award was proper).

In this case, ALJ Bivins found that Plaintiff's disability terminated on July 1, 1995. In a subsequent decision that has not been appealed or reopened, ALJ Johnson found that Plaintiff was disabled for a period beginning October 10, 1995. ALJ Johnson's finding of disability was based upon Plaintiff's knee and foot impairments — apparently the very same impairments this Court has found ALJ Bivins should have considered when assessing Plaintiff's RFC. Since ALJ Johnson actually considered Plaintiff's knee and foot impairments and found that Plaintiff was disabled

beginning in October 1995, it seems unlikely that further fact-finding would reveal that Plaintiff was not disabled in July, August and September of 1995. Accordingly, additional fact-finding might well serve no useful purpose in this case.

In any event, I have found that ALJ Bivins failed in several ways to comply with the Administration's own regulations and rulings governing RFC assessments. ALJ Bivins failed to consider all of Plaintiff's impairments that were evidenced in the record; failed to include a narrative discussion describing how the evidence supported each of his conclusions regarding Plaintiff's RFC; reached the bare conclusion that Plaintiff's testimony regarding his functional limitations was not credible without linking his conclusion to any evidence whatsoever; and ignored a well-supported conclusion by one of Plaintiff's treating physicians that Plaintiff would require frequent changes in position. In addition to ALJ Bivins' errors, Plaintiff filed his request for reconsideration of the Administration's decision that his disability had ceased more than eight years ago. Under the circumstances presented, I find that remand for an immediate award of benefits is justified in this case.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed on November 15, 2002 **[docket # 21]** is **GRANTED,** and this matter shall be remanded to the Commissioner of Social Security for an immediate award of benefits.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**